UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAID ELFARIDI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16 CV 1896 CDP |
| | ) | |
| MERCEDES-BENZ USA, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Hend Aitoufella[1] and Dean and Katherine Jarman bring this

putative class action against Mercedes Benz USA, LLC, and Daimler AG,

claiming to represent purchasers and lessees of all 2003–2015 Mercedes-Benz

vehicles equipped with factory-installed panoramic sunroofs, which plaintiffs

allege suffer from a defect that can cause the sunroofs to spontaneously shatter.

(ECF No. 36 at ¶¶ 76, 80).

Plaintiff Aitoufella seeks to represent both a nationwide class and a Missouri

sub-class and asserts claims for: breach of express warranty under the Magnuson-

Moss Warranty Act (MMWA) and Missouri state law; unjust enrichment; violation

of the Missouri Merchandising Practices Act ("MMPA"); and, breach of the

implied warranty of merchantability under Missouri law.

---

[1] On June 29, 2017, former named plaintiff Said Elfaridi withdrew from the action and the Court
voluntarily dismissed him from the case as class representative. (ECF No. 55)

The Jarmans seek to represent both a nationwide class and a Washington sub-class and assert claims for unjust enrichment, violation of the Washington Consumer Protection Act ("WCPA"), and breach of the implied warranty of merchantability under Washington law.

MBUSA and Daimler AG (collectively, defendants or Mercedes) seek dismissal, arguing that each count fails to state a claim upon which relief can be granted. Daimler also asks the Court to dismiss or strike plaintiffs' request for punitive damages. Because I find plaintiff Aitoufella has sufficiently stated a claim for breach of express warranty under Missouri law and the MMWA against defendant MBUSA, I will deny defendants' motion to dismiss those claims. However, I will grant defendants' motion as to the remaining claims.

## Background[2]

Mercedes manufactures, markets, and distributes automobiles in the United States. Starting in the 2000s, Mercedes manufactured and sold vehicles with an optional upgrade of a factory-installed panoramic sunroof. The panoramic sunroofs are made of tempered glass featuring large areas of ceramic paint or ceramic enamel. Plaintiffs allege the use of ceramic paint or enamel makes the sunroofs prone to spontaneously bursting. Plaintiffs state that "given the size,

---

[2] The facts contained herein are taken from the allegations set out in the complaint. They are considered true for the purpose of this Memorandum and Order. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

thinness, curvature, ceramic print [*sic*], and attachment to the vehicle's frame, the

panoramic sunroof glass in Class Vehicles is weakened and not capable of

withstanding the stresses one would reasonably anticipate it would encounter in

ordinary usage, making the glass defective in that it is substantially likely to

shatter." (ECF No. 36 at ¶ 35).

Plaintiffs further allege that Mercedes was aware of this defect because:

thirty-three Mercedes owners reported an incident of their sunroof spontaneously

shattering with the National Highway and Transportation Safety Administration

(NHTSA);[3] Mercedes internally monitors the NHTSA for information; on May 12,

2014, the NHTSA opened an investigation of Kia Sorento panoramic sunroofs; on

May 6, 2015, an article was published on the web regarding incidents of panoramic

sunroofs shattering in Mercedes-Benz vehicles; and, in 2016, in connection with its

investigation into the Kia Sorrento, the NHTSA sent a letter to Mercedes in 2016

requesting information.

Plaintiffs also maintain that the shattering sunroofs pose a danger to vehicle

occupants. Plaintiffs state that this safety risk was recognized in panoramic

sunroof recalls initiated by Volkswagen, Hyundai, and Audi.

---

[3] Specifically, single complaints were filed in 2008, 2009, and 2011. Two complaints were filed in 2013 and two were filed in 2014. Five complaints were filed through July of 2015. The remaining 21 complaints were filed after July 2015 (after Aitoufella's and the Jarmans' purchase of their vehicles).

In 2013, plaintiffs Dean and Katherine Jarman purchased a new Mercedes C300.  In connection with the purchase of this vehicle, MBUSA provided a New Vehicle Limited Warranty (NVLW).[4]  The NVLW provides that:

> Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period.

The NVLW states that the warranty period is "for 48 months or 50,000 miles whichever comes first."  (ECF No. 47-1 at 14).  The NVLW contains two provisions specific to glass.  The first provision, contained in the "Items Which Are Covered" section, states: "Glass is warranted against stress cracks for 12 months or 12,000 miles, whichever occurs first."  *Id.* at 15.  Then, in the section entitled "Items Which Are Not Covered," under the heading, "DAMAGE TO GLASS" the NVLW states: "Glass breakage or scratches are not covered unless positive physical proof of a manufacturing defect can be established." (ECF No. 47-1 at 15; ECF No. 36 at ¶ 58).[5]

---

[4] The amended complaint alleges that the 2013 NVLW and 2016 NVLW are "substantially the same" and reference MBUSA's 2016 warranty contained on its website.  (ECF No. 36 at ¶ 57).  The 2013 NVLW was not attached to the complaint.  Because it was referenced and forms the basis of plaintiff Aitoufella's express warranty claim, this Court may consider the it without converting defendants' motions to motions for summary judgment.  *See Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018) *see also Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1044 (E.D. Wash. 2005).

[5] I note that this provision is *not* included in the 2016 warranty on MBUSA's website -- *only* the 2013 NVLW specifically states that stress cracks are covered.  However, as both Aitoufella and

On October 26, 2016, the Jarmans' sunroof cracked while they were driving. They drove to the dealership, which denied coverage under the warranty for the repair. After paying to have the sunroof repaired, Mr. Jarman was told that the car had been inspected and the cause of the shattering was external.

In July of 2015, Plaintiff Hend Aitoufella and her husband Said Elfaridi purchased a used 2013 Mercedes GLK350. In April 2016, the panoramic sunroof cracked while Aitoufella was driving in the vehicle. Because Aitoufella was told "the warranty does not cover sunroof damage," she paid to have it repaired. (ECF No. 36 at ¶ 63).

On December 5, 2016, plaintiffs filed a seven-count class action complaint in this Court against MBUSA and its parent company Daimler AG, alleging that Mercedes' panoramic sunroofs are defective across 14 different Mercedes-Benz models. In the amended complaint, plaintiff Aitoufella asserts the following claims: 1) Count I – violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*; 2) Count II – unjust enrichment; 3) Count III – violation of the Missouri Merchandising Practices Act (MMPA); 4) Count IV – breach of the implied warranty of merchantability; and 5) Count V – breach of express warranty. The Jarmans assert claims for 1) Count II – unjust enrichment; 2) Count

_____

the Jarmans purchased 2013 vehicle models specifically covered under the 2013 NVLW, I will consider this provision in my analysis.

VI – violation of the Washington Consumer Protection Act (WCPA); and 3) Count

VII – breach of the implied warranty of merchantability.

Defendant MBUSA filed the instant motion to dismiss on June 5, 2017. On

December 20, 2017, Daimler AG filed its motion to dismiss, incorporating by

reference and joining in all arguments set forth by MBUSA. Daimler also asks the

Court to dismiss or strike plaintiffs' request for punitive damages.

<u>**Motion to Dismiss Standard**</u>

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal

sufficiency of the complaint. When considering a 12(b)(6) motion, the court

assumes the factual allegations of a complaint are true and construes them in favor

of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." In

*Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2)

requires complaints to contain "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); accord

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion

to dismiss, a complaint must contain enough factual allegations, accepted as true,

to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570.

The issue in considering such a motion is not whether the plaintiff will ultimately

prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Neitzke*, 490 U.S. at 327.

## Discussion

## Claims under the State Consumer Protection Statutes

Defendants argue that Counts III and VI should be dismissed because plaintiffs fail to allege facts establishing the basic elements of a MMPA or WCPA claim. Specifically, defendants contend that plaintiffs knew the panoramic sunroofs were defective, failed to disclose this defect to consumers, and affirmatively misrepresented the safety and superior engineering of the sunroofs through advertising statements. Defendants further maintain that the MMPA and WCPA claims, which sound in fraud, fail to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements.

### A. Count III – Violation of the MMPA

The Missouri Merchandising Practices Act makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise. Mo. Rev. Stat. § 407.020. In MMPA actions, courts apply the more stringent pleading requirements of Fed. R. Civ. P. 9(b) pertaining to fraud. *Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV594 RLW, 2016 WL 1242545, at *2 (E.D. Mo.

Mar. 29, 2016).  Under Rule 9(b), "the circumstances constituting fraud" must be "state[d] with particularity." Fed. R. Civ. P. 9(b).

Here, Aitoufella claims defendants 1) made actionable misrepresentations, and 2) concealed and omitted material facts about the defective sunroofs. With regard to an alleged *misrepresentation*, Rule 9(b) requires a plaintiff to allege facts such as "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Johnsen*, 2016 WL 1242545, at *9-10.  *See also Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 920 (8th Cir. 2001).

In contrast, where the MMPA claim concerns an *omission* of a material fact and not an affirmative misrepresentation, to meet Rule 9(b)'s heightened pleading standard, plaintiffs must allege with specificity the time and place of the conduct complained of, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby. *See Budach v. NIBCO, Inc.*, No. 2:14-CV-04324, 2015 WL 3853298, at *7 (W.D. Mo. June 22, 2015).

To the extent Aitoufella's MMPA claim is based upon an affirmative misrepresentation, defendants claim dismissal is appropriate as the amended complaint fails to identify any actionable misrepresentations with the specificity required under Rule 9(b).  Plaintiffs counter that the amended complaint contains two specific examples of deceptive advertisements which misled consumers by

claiming Mercedes-Benz panoramic sunroofs were stronger, safer and of superior engineering than other automakers' sunroofs.

The first advertisement set forth in the amended complaint describes a 2012 E-Class Coupe. Under the phrases, "invisible strength" and "incomparable scenery," the ad highlights several features of the vehicle. First, the ad refers to the four pillarless side windows in the vehicle and states no other automaker offers such a feature because they lack Mercedes' engineering strength which allows Mercedes to match style with safety. The ad then turns to a different feature – the panoramic sunroof, noting that it provides a breathtaking view of the sun and stars. At the bottom of the ad, these features are again addressed in more detail. Under the heading, "Panoramic roof," the ad expounds on the dramatic view of the sky and how the front portion of the window can tilt up or be slid back for a breeze. The second advertisement in the amended complaint pertains to the 2015 G model vehicle. The ad describes the advantages of the panoramic sunroof – the views it affords, how its glass rejects heat, and how it lets passengers take in the breeze.

I do not find that these two advertisements constitute actionable misrepresentations giving rise to a MMPA claim. First of all, the ads pertain to different models of vehicles (the 2012 E-Class Coupe and the 2015 GLA) than the vehicles purchased by Aitoufella (2013 GLK350) or the Jarmans (2013 C300). Moreover, the alleged deceptive statements in the advertisements – regarding

strength, safety and superior engineering – were made in reference to a feature *other than* the panoramic sunroof. In the first ad, the claims of safety and engineering describe the pillarless design of the side windows. The second ad does not even mention safety or engineering. Accordingly, the advertisements not only fail to satisfy Rule 9(b), but they also fail to satisfy Rule 8(a)(2)'s less stringent requirements. As such, I find Aitoufella has not sufficiently alleged an actionable misrepresentation in her amended complaint.[6]

Aitoufella alternately alleges that she has stated a claim under the MMPA as defendants failed to disclose the defect and concealed and omitted material facts about the sunroof. Defendants again argue that dismissal is warranted as plaintiff fails to plead an essential element of an omission-based fraud claim – that defendants *knew* of the alleged sunroof defect at the time plaintiff purchased her vehicle.

A claim for omission of a material fact under the MMPA has a scienter requirement. *Budach*, 2015 WL 3853298, at *8. "A plaintiff must show the defendant failed to disclose material facts that were '*known to him/her,* or upon reasonable inquiry *would [have been] known to him/her.*'" *Id.* (quoting *Plubell v.*

---

[6]The parties devote much argument in their briefs disputing whether the advertising statements constitute non-actionable "puffery." However, I note that it is unresolved in the state of Missouri whether puffery is actionable under the MMPA. *Murphy v. Rigdon*, No. 4:17CV00556 NKL, 2018 WL 1005409, at *4 (W.D. Mo. Feb. 21, 2018). Moreover, I find it unnecessary to address the parties' puffery debate as the contested statements concerning safety and engineering were not made in reference to the panoramic sunroofs.

*Merck & Co., Inc.,* 289 S.W.3d 707, 714 (Mo. Ct. App. 2009)) (emphasis in original).

Both plaintiff Aitoufella and the Jarmans argue that they have sufficiently alleged Mercedes' knowledge based upon: 33 consumer complaints made by Mercedes owners to the NHTSA; defendants' internal monitoring of the NHTSA; the NHTSA's investigation of Kia Sorento's panoramic sunroof; an article reporting on the Mercedes-Benz sunroof and the panoramic sunroof shattering issue in May 2015; and the NHTSA's 2016 letter requesting information from Mercedes. Plaintiffs also argue in their brief that Mercedes was aware of sunroof recalls by other vehicle manufacturers. For the reasons stated below, I agree with defendants that plaintiffs have not pleaded sufficient facts to establish defendants' knowledge of the alleged defect.

Plaintiffs attempt to establish defendants' knowledge of a defect based on the 33 complaints they allege were filed with the NHTSA and internally monitored by defendants. The 33 complaints were received between 2008 and 2017 – over a period of nine years. Upon review of the identified complaints, 21 were filed after plaintiffs purchased their cars (in 2013 and 2015). The 12 complaints received prior to the purchase of the vehicles are not significant when compared to the potential number of class vehicles with a panoramic sunroof. As noted earlier, there are 14 different models of Class vehicles, covering a span of years from 2003

through the present. In the amended complaint, plaintiffs contend that defendants sold "many thousands of Class Vehicles." (ECF No. 36 at ¶ 79). Twelve monitored complaints of glass breakage are insufficient to infer defendants' knowledge of a defect affecting thousands of vehicles.

Plaintiffs also allege defendants were on notice of a defect because of a NHTSA investigation into the Kia Sorento's panoramic sunroof. However, an investigation into another automaker's vehicle is insufficient to establish defendants' knowledge of a Mercedes-benz defect. *See David v. Volkswagen Group of Am.*, No. 17-11301-SDW-CLW, slip op., at 13 (D.N.J. April 26, 2018).

Nor do voluntary recalls of vehicles by Volkswagen, Audi and Hyundai establish defendants' knowledge of a defect in a Mercedes-Benz vehicle. Although plaintiffs only reference these recalls in their amended complaint to establish that shattering sunroofs posed a safety risk, they argue in their response brief that the recalls also establish defendants' awareness of a defect. While the amended complaint does state in paragraph 56 that the recalled vehicles had "similar panoramic sunroof problems," it does not allege that the sunroofs of these other manufacturers had the precise defect at issue here or that they shared the same design as the Mercedes-Benz vehicles.[7] Moreover, it stands to reason that

---

[7] In their reply brief (ECF No. 53-1), defendants ask the Court to take judicial notice of safety recall letters in order to clarify that the defects in the recalled vehicles were distinct from the defect alleged here. However, I find it unnecessary to take judicial notice of these documents in

panoramic sunroofs could shatter for various reasons.  Notably, the Jarmans were told the cause of their glass shattering was external.

Plaintiffs have cited no authority, and this Court is aware of none, holding that prior recalls of vehicles with "similar problems" is, standing alone, sufficient to establish knowledge of a defect.  *See Deras v. Volkswagen Group of America, Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018). Had the NHTSA ordered a recall or made findings with respect to MBUSA's panoramic sunroofs, this would be sufficient for me to infer their knowledge of a defect.  However, plaintiffs concede in their response brief that this is not the case. (ECF No. 51 at 27).

Plaintiffs also rely on an article published in May 2015, just two months before plaintiff Aitoufella purchased her vehicle (and after the Jarmans purchased their car).  The article, found on the website digitaltrends.com, is entitled, "Sunroofs Shattering on Mercedes-Benz Cars, Cause Still Unknown."  I find that this report is insufficient to allege defendants' knowledge of a defect.  The article states in its title that the cause of the breakage was *unknown* and concedes that a foreign object or interior air pressure could have caused the breakage.

Lastly, plaintiffs contend their allegation that the NHTSA requested information from Mercedes about its panoramic sunroofs (in connection with its

---

order to rule on defendants' motion to dismiss.  While plaintiffs' response brief indicates the defects in the recalled vehicles is the same as the one alleged here, the complaint does not.

Kia investigation) establishes defendants' knowledge of a defect. However, like the majority of the 33 complaints to the NHTSA, this 2016 letter requesting information occurred *after* plaintiffs made their purchases.[8]

Because plaintiffs' allegations regarding defendants' knowledge of a defect are deficient, I will dismiss Count III. *Compare Deras*, 2018 WL 2267448, at *4 (finding alleged knowledge based upon customer complaints to the NHTSA, internal monitoring, and other recalls insufficient to state a claim), *and David v. Volkswagen Group of Am.*, No. 17-11301-SDW-CLW, slip op., at 13 (D.N.J. April 26, 2018) (concluding plaintiff did not plead knowledge of defect where plaintiff alleged consumer complaints, a letter to the NHTSA, and a prior recall by Volkswagen), *with Beaty v. Ford Motor Co.*, No. C17-5201RBL, slip op., at 10 (W.D. Wash. Jan. 16, 2018) (broadly stating there were plausible allegations Ford knew of purported defect, but only specifically noting one such allegation – that Ford itself articulated public information that panoramic sunroofs were prone to shattering).

---

[8] Plaintiffs argue that the MMPA does not require knowledge of the defect *at the time of the sale*. Plaintiffs cite to *Snelling v. HSBC Card Servs. Inc.*, No. 4:14CV431 CDP, 2015 WL 3621091, at *8 (E.D. Mo. June 9, 2015), in support of this assertion. However, I find this case inapposite as it involves an affirmative representation and does not address the element of scienter in an omission-based claim that is at issue here.

**B. Count VI – Violation of the WCPA**

In Count VI, the Jarmans alleges defendants violated the Washington Consumer Protection Act, RCW 19.86.010 et seq.  To prevail on a claim under the WCPA, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered.  *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,* 162 Wash.2d 59, 74, 170 P.3d 10 (2007) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 784, 719 P.2d 531 (1986).

As noted above, the heightened pleading requirements of Federal Rule 9(b) apply to plaintiffs' claims where fraud is an essential element or where plaintiffs specifically allege fraudulent conduct.  Fed. R. Civ. P. 9(b).  Although fraud is not a necessary element of a WCPA claim, plaintiffs' WCPA claim alleges fraudulent conduct.  *See Goodman v. HTC Am., Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *16 (W.D. Wash. June 26, 2012).  The Jarmans state that defendants, "concealed material facts concerning the nature of the panoramic sunroof materials used and workmanship employed" and "intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiffs." (ECF No. 36 at ¶¶ 151, 154).  Plaintiffs offer no theory whereby defendants'

conduct would be unfair, but not deceptive.  *See Goodman*, 2012 WL 2412070, at

*16.  Therefore, Rule 9(b) applies to the Jarmans' WCPA claim in Count VI.

I will first address the Jarmans' allegation that defendants made actionable

statements that misled consumers in violation of the WCPA.  As noted in my

discussion of Aitoufella's MMPA claim, plaintiffs allege the advertisements

included in the amended complaint constituted deceptive statements and satisfy

Rule 9(b)'s specificity requirement.  For the same reasons articulated above in my

analysis of Aituoufella's claim under the MMPA, I conclude the advertisements do

not constitute actionable misrepresentations giving rise to a WCPA claim.

Likewise, I conclude that the Jarmans have not alternately stated a claim

under the WCPA by alleging that defendants failed to disclose the defect and

concealed material facts about the panoramic sunroof.  Like the MMPA, the

WCPA has a scienter requirement for claims based upon fraudulent concealment

and the omission of a material fact.  *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122,

1132-33 (W. D. Wash. 2010); *Zwicker v. Gen. Motors Corp.,* No. C07–0291–JCC,

2007 WL 5309204, at *4 (W. D. Wash. July 26, 2007).  As detailed above,

plaintiffs do not sufficiently plead that defendants had knowledge of the alleged

defect in the panoramic sunroofs at the time plaintiffs purchased their vehicles.[9]

Accordingly, Count VI will be dismissed.

## Count V – Aitoufella's Claim for Breach of Express Warranty

In Count V of the amended complaint, plaintiff Aitoufella alleges defendants' refusal to honor the warranty with a free repair and replacement constitutes breach. Defendants respond that Aitoufella's claim fails because there is no dispute that her 2013 vehicle was well outside the express warranty's one year/12,000 mile limitation for glass damage caused by "stress cracks." Moreover, defendants contend that the "warranty disclaims coverage for broken glass, regardless of 'stress,' unless there is 'positive physical proof of a manufacturing defect;'" and plaintiff did not provide "'positive physical proof" at the time she requested warranty repairs." (ECF No. 47 at p.2).

Here, plaintiff Aitoufella claims to own a model year 2013 GLK, which the parties agree is subject to the 2013 NVLW. The NVLW contains two express provisions relating to glass:

---

[9] In their response in opposition, plaintiffs cite to several Washington cases for the proposition the Rule 9(b) standard is relaxed in fraudulent *omission* claims. Relaxing the standard does not rescue plaintiffs' WCPA claims. When the Jarmans purchased their vehicle in 2013, only five complaints had been filed with the NHTSA. The NHTSA's investigation into the Kia Sorento sunroofs had not yet begun, the request for information from Mercedes related to that investigation had not been made, and the article on MBUSA and incidents of shattering sunroofs had not been published. Even under a relaxed standard, plaintiffs fail to adequately establish defendants' knowledge.

"Glass is warranted against stress cracks for 12 months or 12,000 miles, whichever occurs first."

"Glass breakage or scratches are not covered unless positive physical proof of a manufacturing defect can be established."

(ECF No. 47-1 at 14-15).

First, at this preliminary stage of the proceedings, it is not clear that the spontaneous shattering of sunroofs described in the amended complaint falls squarely into the category of "stress cracks" addressed in the first provision in the warranty, and is therefore barred by the one-year/12,000 mile limitation. Although plaintiff does allege that the stress of ordinary usage played a role, the amended complaint also lists significant additional causes of spontaneous bursting, such as the type of ceramic paint used, the manner in which the glass was attached to the frame, and the size, thinness, and curvature of the sunroof. In addition, the shattering of an entire sunroof requiring a complete replacement of the glass seems distinct from the repair of standard stress cracks.

Therefore, I will turn to whether the breakage was covered under the second warranty provision pertaining to glass. I do not find defendants' argument persuasive that this provision of the warranty was inapplicable because plaintiff failed to present positive proof of a manufacturing defect when her sunroof was replaced. The plain language of the NVLW does not require positive proof of a manufacturing defect to be presented by a vehicle owner *at the time of repair*. It

only requires that the defect "can be established." It is well settled that "'[u]nequivocal language in written contracts must be given its plain meaning and enforced as written.'" *Citimortgage, Inc. v. Chicago Bancorp, Inc.*, 2014 WL 4415261, at *3 (E.D. Mo. Sept. 8, 2014) (citing *Cmty. Fed. Sav. & Loan Ass'n of Overland v. Gen. Cas. Co. of Am.*, 274 F.2d 620, 624 (8th Cir. 1960)). The NVLW does not address the timing or manner of providing proof of a manufacturing defect. Furthermore, it essentially would be an impossible task for an ordinary vehicle owner to provide positive proof of a manufacturing defect when trying to obtain a repair. At this preliminary stage, because plaintiffs have alleged the spontaneous shattering was due to such a defect, I cannot say the repair was not covered by the warranty.

Accordingly, I do not find that the NLVW's terms exclude coverage for the type of breakage alleged in the complaint and will deny defendants' motion to dismiss Aitoufella's breach of express warranty claim under Count V. However, I must still consider Daimler's separate argument that Aitoufella's claim must be dismissed against it as MBUSA, not Daimler, is the sole warrantor. Daimler contends Aitoufella's breach claim fails as a matter of law because Aitoufella has not alleged an affirmation of fact or promise by Daimler that created an express warranty. In response, plaintiff argues that advertising statements contained in the

amended complaint created actionable warranty claims because Daimler

developed, reviewed and approved the marketing designed to sell class vehicles.

Under Missouri law, express warranties by the seller are created in relevant

part as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer
> which relates to the goods and becomes part of the basis of the
> bargain creates an express warranty that the goods shall conform to
> the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the
> bargain creates an express warranty that the goods shall conform to
> the description.

Mo. Rev. Stat. § 400.2-313(1)(a),(b); *Carpenter v. Chrysler Corp.,* 853 S.W.2d

346, 357 (Mo. App. 1993).

First, plaintiff's claim of breach of express warranty with respect to the

advertisements fails because plaintiff does not sufficiently allege the

advertisements constituted an affirmation or statement by Daimler that became a

basis of the bargain.  Not only is plaintiff's allegation that Daimler approved and

developed marketing broad and conclusory, but the amended complaint contains

no allegation that plaintiff even read the specific advertisements contained therein.

*Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*, No. 4:07CV1242 JCH, 2008

WL 2074107, at *3 (E.D. Mo. May 14, 2008) (finding that because the plaintiffs

did not allege they read the advertising at issue prior to their purchase, they cannot

demonstrate the advertising constituted a material factor inducing the plaintiffs to

purchase the goods); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 687 F. Supp. 2d 897, 906 (W.D. Mo. 2009), *clarified on denial of reconsideration,* No. 08-1967-MD-W-ODS, 2010 WL 286428 (W.D. Mo. Jan. 19, 2010) (stating a representation cannot be part of the "bargain" if the other party to the bargain did not know the representation was made). Thus, plaintiff does not allege that an affirmation by Daimler induced her to purchase her car.

Moreover, even if I found plaintiff's allegations sufficient, the language of the NVLW itself makes it clear the warranty was issued by and obligates MBUSA, not Daimler. The NVLW clearly states that "Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period."

Accordingly, I find the amended complaint lacks sufficient allegations to support an express warranty claim against Daimler, and Aitoufella's claim for breach of express warranty against Daimler will be dismissed. Her claim for breach of express warranty against MBUSA, however, survives dismissal.

## Count I – Aitoufella's MMWA Claim

Defendants contend that Aitoufella's Magnuson-Moss Warranty Act claim fails because plaintiff does not assert a viable state-law warranty claim. However, for the reasons discussed above, I have concluded that Aitoufella has successfully plead a violation of state warranty law against MBUSA, and will therefore deny defendants' motion to dismiss plaintiff's MMWA claim as it pertains to MBUSA. I will, however, grant defendants' motion to dismiss Count I against Daimler as no state warranty claim remains against it.

## Counts IV and VII – Implied Warranty Claims

In Counts IV and VII of the amended complaint, plaintiffs allege defendants breached the implied warranty of merchantability in violation of Missouri and Washington law. Specifically, plaintiffs contend their vehicles were not in merchantable condition and were not fit for the ordinary purpose for which vehicles are used because they were fitted with defective panoramic sunroofs. Defendants move to dismiss plaintiffs' implied warranty claims, arguing that plaintiffs do not allege a defect that made their vehicles unfit for the ordinary purpose of providing transportation. With regard to the Jarman plaintiffs, defendants additionally argue that they did not allege breach within the applicable warranty period.

Specifically, with regard to the Jarmans, defendants argue that 1) the NVLW limits the duration of any implied warranty to the first to occur of four years or 50,000 miles, and 2) the Jarmans allege in the amended complaint that their vehicle had 60,279 miles on it seven months *prior* to their sunroof shattering. In their memorandum in opposition to MBUSA's motion to dismiss, the Jarmans concede that their injury was incurred outside of the warranty period.[10] As such, I find the Jarmans' implied warranty claim is precluded by the express terms of the NVLW will dismiss Count VII with prejudice.

Turning Aitoufella's implied warranty claim in Count IV, defendants argue that a one-time incident of broken glass does not render an automobile unfit for its ordinary purpose of providing transportation and the claim should be dismissed.

Under Missouri law, the implied warranty of merchantability warrants that the product is "fit for the ordinary purposes for which such goods are used." Mo. Rev. Stat. 400.2-314(2)(c); *Williams v. United Techs. Corp.*, No. 2:15-CV-04144-NKL, 2015 WL 7738370, at *6 (W.D. Mo. Nov. 30, 2015). The implied warranty of merchantable quality or fitness for use does not require a perfect product, only one of reasonable quality or reasonable fitness. *Smith v. Old Warson Dev. Co.*, 479

---

[10] After conceding they did not allege breach within the applicable warranty period, the Jarmans stated that they will continue to pursue their implied warranty claims to the extent the warranty "is unenforceable, invalid, or may be pursued under any other applicable legal theory." (ECF No. 51 at 20). However, because the Jarmans do not support this cursory assertion with argument or authority supporting the proposition, I decline to consider it further.

S.W.2d 795, 798–99 (Mo. 1972).  A product does not fall short of this standard simply because it experiences periodic problems.  *Williams*, 2015 WL 7738370, at *6 (W.D. Mo. Nov. 30, 2015).  With regard to automobiles, the implied warranty of merchantability can only be breached when the "vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).

In this case, Aitoufella's 2013 vehicle successfully functioned for several years before the sunroof shattered in 2016, and continued to function after the sunroof was replaced.  This extensive performance satisfies a minimum level of quality such that defendants did not breach the implied warranty of merchantability based upon Aitoufella's allegations.  *See also Sheris v. Nissan North America Inc.*, 2008 WL 2354908, at *5 (D.N.J. June 3, 2008) (finding no violation of the implied warranty of merchantability where plaintiff drove his car for two years and over 20,000 miles without issue).  Although Aitoufella claims that a single incident of broken glass renders a vehicle unsafe and unfit for transportation, she provides no authority supporting this proposition. Instead she cites to a factually distinguishable California case, *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007), involving a vehicle with a litany of problems requiring

numerous repairs.  Accordingly, I find that the facts alleged do not establish that plaintiff's vehicle was unmerchantable.  Therefore, as plaintiff has not successfully pleaded a violation of the implied warranty of merchantability under Missouri law, I will dismiss Count IV with prejudice.

## Count II – Unjust Enrichment Claim

In Count II, plaintiffs Aitoufella and the Jarmans assert defendants were unjustly enriched as a result of their acts and omissions related to the defective sunroofs.  Defendants argue plaintiffs' claims for unjust enrichment fail because they are categorically barred by the contract that governs the subject of this dispute – the NVLW.[11]

A claim for unjust enrichment is founded upon equitable principles whereby the law implies a contract.  *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014).  Under Missouri and Washington law, to state a claim for unjust enrichment, a plaintiff must show that: (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit.  *Budach*, 2015 WL

---

[11] Defendants initially argue that because plaintiffs did not allege which state's law applied to their unjust enrichment claims, their claims failed basic notice-pleading requirements and should be dismissed.  The only case cited by defendants in support of their proposition is *True v. Conagra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 WL 176037, at *8 (W.D. Mo. Jan. 4, 2011).  *True v. Conagra*, however, does not address the pleading requirements for an unjust enrichment claim.  Instead, it addresses whether conflicts in potential state laws, including the law of unjust enrichment, defeat class certification.  *Id.* at *8.  Because the case does not stand for the proposition for which it was cited, I decline to address defendants' argument any further.

3853298, at *8 (citing *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center,* 280 S.W.3d 678, 697 (Mo. Ct. App. 2009)). *See also Young v. Young,* 164 Wash. 2d 477, 484, 191 P.3d 1258, 1262 (2008*)*.

An unjust enrichment claim cannot proceed, however, where an express contract governs the relationship between the parties. *Lowe*, 430 S.W.3d at 349; *Obester v. Boutique Hotel Dev. Co. LLC*, No. 11-3190-CV-S-RED, 2012 WL 12895061, at *8 (W.D. Mo. Feb. 27, 2012); *see also Mills v. Baugher*, No. 21258-8-III, 2003 WL 21761817, at *5 (Wash. Ct. App. July 31, 2003) (a party to an express contract is bound by the provisions of that contract, and may not disregard the contract and bring an action on an implied contract relating to the same subject matter). Accordingly, a plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover. *Lowe*, 430 S.W.3d at 349 (citing *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). Further, "'the existence of a valid and enforceable contract governing the subject matter at issue ordinarily precludes recovery for events arising out of the same.'" *Dubinsky v. Mermart LLC*, No. 4:08-CV-1806 (CEJ), 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), aff'd, 595 F.3d 812 (8th Cir. 2010) (quoting *In re Express Scripts, Inc., PBM Litigation,* 522 F.Supp.2d 1132, 1148 (E.D. Mo. 2007)).

In this case, plaintiffs expressly allege the existence of a contract – the NVLW.  In the section of the amended complaint entitled, "Mercedes' Deceptive Warranty Practices," the amended complaint states that plaintiffs and class members "reasonably expected that all damage that resulted from the panoramic sunroof defect would be covered under the warranty, and that they would not be charged anything for such repairs."  (ECF No. 36 at ¶59).  Plaintiffs further contend that "Mercedes has systematically denied coverage" and plaintiffs "have been forced to incur substantial repair bills and other related damages. . . ."  *Id.* at ¶60.  In alleging defendants were unjustly enriched, plaintiffs premise their argument on the NVLW by stating that Mercedes "unjustly charge[d] Plaintiffs and class members for repairs and/or replacement of the defective panoramic sunroofs. . . ."  *Id.* at ¶ 104.  Plaintiffs contend that defendants "appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs" *Id.* at ¶ 106.

Thus, plaintiffs have explicitly based their unjust enrichment claims on the violation of the NVLW.  Because the NVLW governs the same subject matter, plaintiffs are precluded from recovering under an equitable theory.  Moreover, plaintiffs' additional contention that they unjustly enriched defendants by overpaying for vehicles with defective sunroofs similarly fails due to the existence of the NVLW, which explicitly addresses and covers manufacturing defects.  *See Owen v. Gen. Motors Corp.*, No. 06-4067-CV CNKL, 2007 WL 172355, at *5

(W.D. Mo. Jan. 18, 2007) ("To the extent that [the plaintiffs] argue a benefit was conferred on [defendant] by the fact that they overpaid for a [vehicle] with defective wipers, that argument is foreclosed by the existence of the warranty which they knew would last only four years.").

Plaintiffs further point out that they properly plead their unjust enrichment claims in the alternative, but I do not find that precludes dismissal here. *See Budach*, 2015 WL 3853298, at *8. A plaintiff is certainly entitled to bring an unjust enrichment claim as an alternative ground for relief pursuant to Rule 8(e)(2) of the Federal Rules of Civil Procedure. *Id.* But where the claim is based in part on the express terms of the warranty, it arises out of the warranty contract and must be dismissed. *Id; see also Deras*, No. 17-CV-05452-JST 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018) ("Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to an unjust enrichment claim while also alleging an express contract.").

Accordingly, defendants' motion to dismiss Count II will be granted. Plaintiffs' unjust enrichment claims are dismissed with prejudice.

## Injunctive Relief – Request for Recall

In their prayer for relief, plaintiffs ask the Court to order plaintiffs to "adequately disclose and repair the defective sunroofs." Defendants maintain that plaintiffs' request amounts to a court-ordered recall to replace the panoramic sunroofs. Defendants argue plaintiffs' recall-related claims should be dismissed because they are preempted by the Motor Vehicle Safety Act, 49 U.S.C. 30101 *et seq.* Defendants assert in the alternative that even if plaintiffs' recall-related claims are not actually preempted, the Court should dismiss them under the doctrine of primary jurisdiction. As an initial matter, I note that defendants do not specifically identify which counts they seek to dismiss, but instead generally ask the Court to dismiss the "recall-related claims." My review of the amended complaint shows that only Counts III and VI, alleging violations of the MMPA and WCPA respectively, ask for injunctive relief enjoining defendants. Because I am granting defendants' motion to dismiss Counts III and VI, I find it unnecessary to address defendants' preemption and primary jurisdiction arguments.

## Daimler's Motion to Dismiss or Strike Plaintiffs' Request for Punitive Damages

In its separate motion to dismiss, Daimler asks the Court to dismiss or strike plaintiffs' request for punitive damages. Daimler states that, in their effort to serve Daimler through the Hague Service Convention, plaintiffs made certain representations to the German Central Authority (GCA) that are inconsistent with

the punitive damages they seek in the amended complaint. Specifically, plaintiffs

stated that they would not seek damages from a split-recovery statute or seek

punitive damages from Daimler.[12] Daimler contends that the GCA authorized

service based upon these representations. Daimler argues that plaintiffs' request

for punitive damages should be dismissed pursuant to the doctrine of judicial

estoppel, or alternately, stricken pursuant Fed. R. Civ. P. 12(f).

Plaintiffs concede that the GCA has rejected service where punitive damages

exist through a split recovery statute as violative of its sovereignty. Plaintiffs

further note that while Missouri has a split-recovery statute,[13] they also seek

punitive damages under Washington and Federal law, which do not have such a

statute. Plaintiffs contend that defendants do not demonstrate that the test for

judicial estoppel has been met.

"[J]udicial estoppel embodies the notions of common sense and fair play."

*Egan v. Craig*, 967 S.W.2d 120, 126 (Mo. App. E.D. 1998). "Missouri courts in

particular have consistently refused to allow litigants to take contrary positions in

separate proceedings to ensure the integrity of the judicial process." *In re Contest*

*of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 146 (Mo. App. W.D.

---

[12] Daimler attaches a copy of the representations made by plaintiffs'' counsel as an exhibit to its motion to dismiss. (ECF No. 65-1). Plaintiffs do not dispute the authenticity or accuracy of the Exhibit.

[13] *See* RSMo §537.675.2 allowing the State of Missouri to deposit fifty percent of any punitive damages recovery into the state's tort victim compensation fund.

2011).  There is no precise formula for determining whether judicial estoppel applies, *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo. Ct. App. 2007), but three considerations have commonly been used to guide the determination: "(1) a party's later position was clearly inconsistent with its earlier position, (2) the party succeeded in persuading a court to accept the earlier position, and (3) ... the party asserting inconsistent positions would derive an unfair advantage or impose an unfair detriment on the opposing party." *Berger v. Emerson Climate Techs.*, 508 S.W.3d 136, 142–43 (Mo. Ct. App. 2016); *Minor v. Terry*, 475 S.W.3d 124, 133 (Mo. Ct. App. 2014); *see also Zedner v. U.S.*, 547 U.S. 489, 505, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006).

Plaintiffs' representations to the GCA are incompatible with the relief sought in the amended complaint.  Moreover, the inconsistency appears to impose an unfair detriment on Daimler as the parties agree seeking damages under Missouri's split recovery statute violates German sovereignty.  However, at this stage of the proceeding, I need not consider these issues further as I determined that the claims pending against Daimler will be dismissed.  As such, I will deny Daimler's motion to dismiss or strike plaintiffs' request for punitive damages as moot.

## Plaintiffs' Request for Leave to Amend

To the extent this Court finds any claim insufficient, plaintiffs request leave to amend to comply with the Court's ruling. Federal Rule of Civil Procedure 15(a) states, "The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, the policy favoring liberal allowance of amendment does not mean that the right to amend is absolute." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394–95 (8th Cir. 2016), reh'g denied (May 4, 2016) (internal quotation marks and brackets omitted).

Here, plaintiffs have already availed themselves once of the opportunity to amend their complaint after MBUSA filed its first motion to dismiss. Plaintiffs' unjust enrichment and implied warranty claims in Counts II, IV and VII cannot be cured by the allegation of other facts and plaintiffs have attempted and failed to amend their MMPA and WCPA claims in Counts III and VI sufficiently to survive dismissal. I will therefore deny leave to amend.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Mercedes Benz USA, LLC, and Daimler AG's motions to dismiss [46] and [64] are **GRANTED** as to Counts II, III, IV, VI and VII of the complaint, and those Counts are hereby dismissed with prejudice.

**IT IS FURTHER ORDERED** that Daimler AG's motion to dismiss [64] Counts I and V is **GRANTED** with respect to defendant Daimler AG only. In all other respects, the motions to dismiss are **DENIED**.

**IT IS FURTHER ORDERED** that defendant Daimler AG's motion to dismiss or strike plaintiffs' request for punitive damages is **DENIED** as moot.

As the only remaining claims are Counts I and V against Mercedes Benz USA, it shall file its answer to Counts I and V of the amended complaint within the time prescribed by the federal rules.

The case will be set for a Rule 16 scheduling conference by separate Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of August, 2018.